ELIAS WARD *vs.* THE STATE OF MARYLAND.

*Constitutionality of the Act of 1868, ch. 413, impos-*
*ing a Penalty for the Sale of Goods, &c., by Card,*
*Sample, Trade-List, Catalogue, &c., by Non-residents,*
*without a License.*

The Act of 1868, ch. 413 provides, that " No person not being a perma-
nent resident in this State shall sell, offer for sale, or expose for sale,
within the limits of the city of Baltimore, any goods, wares, or mer-
chandise whatever, other than agricultural products, and articles manu-
factured in the State of Maryland, within the limits of the said city,
either by card, sample, or other specimen, or by written or printed trade-
list, or catalogue, whether such person be the maker or manufacturer
thereof or not, without first obtaining a license so to do." On an in-
dictment against a party for a violation of this law, HELD:

1st. That said law is not repugnant to that clause of the 8th section of
the first article of the Constitution of the United States, which grants
to Congress the power " to regulate commerce with foreign nations,
and among the several States, and with the Indian tribes."

2d. That it is not repugnant to that clause of the 2d section of the 4th
article of the Constitution which declares, that " the citizens of each
State shall be entitled to all privileges and immunities of citizens of
the several States."

3d. That it is within the power of a State to tax, in the shape of a license,
any trade, business, or occupation, when carried on in its borders by
those who are not permanent residents of the State, whether foreigners
or citizens of other States.

4th. That even if this law is to be regarded as restrictive and discrimi-
nating in its character and design, it still simply imposes a tax on a
particular business carried on in a particular mode within the limits
of the State, which it is perfectly competent for the legislature to regu-
late and restrain.

APPEAL from the Criminal Court of Baltimore City.

The nature of the case is fully presented in the opinion
of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*George C. Maund* and *A. Stirling, Jr.,* for the appellant.

The law under consideration requires the non-resident to pay for his license to sell goods by sample, &c., the sum of three hundred dollars, which is twice as large a sum as it exacts from the resident engaged—whether selling by sample or otherwise—in the most extensive mercantile transactions.   *Code of Pub. Genl. Laws, Art.* 56, *sec.* 55.

The power to exact from the non-resident more money for a license to sell goods than from the resident, involves the power to prohibit the non-resident from selling altogether.   *Brown et al. vs. State of Maryland,* 12 *Wheat.,* 439; *McCulloch vs. State of Maryland,* 4 *Wheat.,* 316; *Norris vs. The City of Boston,* 7 *Howard,* 283; *Gibbons vs. Ogden,* 9 *Wheat.,* 196; *Groves vs. Slaughter,* 15 *Pet.,* 511; *Holmes vs. Jennison,* 14 *Pet.,* 570; *State of Louisiana vs. S. H. Kennedy & Co.,* 19 *Louisiana Reports,* 397; and particularly the opinion of McLEAN, J., in *Smith vs. Turner,* 7 *Howard,* 283.

Commerce among the several States is *traffic* among the several States; it may mean more than traffic, but it, at the least, means so much.   *Gibbons vs. Ogden,* 9 *Wheat.,* 189.   Congress has regulated traffic between the citizens of the States, by leaving it *free* between the citizens of the different States.   "It has been well remarked, that the regulation of commerce consists as much in negative as in positive action."   McLEAN, J., in *Smith vs. Turner.*

The question of difficulty is, not whether the State may, as in this case, charge more to the non-resident than the resident for a license to sell and introduce into this State goods located in another State, but whether she can require for such a purpose, or from any one, a license at all. It may, with considerable confidence, be asserted that she cannot.   *Brown et al. vs. State of Maryland,* 12 *Wheat.,* 419;

*State of Louisiana vs. S. H. Kennedy & Co.,* 19 *Louisiana Reports,* 397; *Commonwealth of Penna. vs. The Philadelphia and Reading R. R. Co.,* reported in Baltimore Daily Law Transcript, May 12th, 1869.

The law in question violates the second section of the fourth article of the Constitution of the United States, which declares that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." *Cooley's Constitutional Limitations,* 16, 397, and the authorities cited in the margin; *Corfield vs. Coryell,* 4 *Wash. C. C.,* 371; *Campbell vs. Morris,* 3 *H. & McH.,* 554; *Crandall vs. State,* 10 *Conn.,* 343, 344.

*Isaac D. Jones* (Attorney-General) for the appellee.

Commerce "among the several States" does not comprehend any commerce which is purely internal, between man and man in a single State, or between different parts of the same State, and not extending to or affecting other States. Commerce among the States means commerce which concerns more States than one. It is not an apt phrase to indicate the mere *interior traffic of a single State.* The completely internal commerce of a State may be properly considered as reserved to the State itself. 2 *Story on the Constitution, sec.* 1061; *Gibbons vs. Ogden,* 9 *Wheat.,* 194; *Brown vs. Maryland,* 12 *Wheaton,* 446–447; 1 *Kent's Com.,* 436–437.

Again, the power to regulate commerce is not at all like that to lay taxes. The latter may well be concurrent, while the former is exclusive. The power of Congress in laying taxes is not necessarily, or naturally, inconsistent with that of the States. Each may lay a tax on the same property, without interfering with the action of the other. 2 *Story on the Const., sec.* 1064; *Gibbons vs. Ogden,* 9 *Wheaton,* 1.

The Constitution of the United States treats the power to lay taxes and the power to regulate commerce as distinct and independent powers. 2 *Story on the Const., sec.* 1065.

It is further contended by the appellant that the law in question violates the provision of the Constitution of the United States, which declares that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

The claim of the appellant, as set up in this case, is, to come into this State and enjoy *more* privileges and immunities than are accorded to citizens of the State. The meaning of this provision is, that the citizens of one State were not to be deemed aliens in another State, nor entitled to take or hold real estate, or other privileges, except as other aliens. The intention was to confer a general citizenship, and to communicate all the privileges and immunities which citizens of the same State would be entitled to under the like circumstances. 3 *Story on the Const., sec.* 1800.

"It means that the citizens of all the States shall have the peculiar advantage of acquiring and holding real and personal property, and that such property shall be protected and secured by the laws of the State in the same manner as the property of the citizens of the State is protected." *Campbell vs. Morris,* 3 *H. & McH.,* 554.

The State has the exclusive right to restrict the right of suffrage and holding office to the citizens of the State who have resided therein for the time prescribed. It has the same right to restrict her merely interior traffic, and to prescribe the terms upon which non-resident traders shall be allowed to engage in that business.

MILLER, J., delivered the opinion of the Court.

The appellant was indicted for that, not being a permanent resident of this State, he did, on the 4th of Decem-

ber, 1868, sell, by sample, within the limits of Baltimore city, certain goods, wares, and merchandise, described in the indictment, other than agricultural products and articles manufactured in the State of Maryland, without first obtaining a license so to do, contrary to the provisions of the Act of 1868, ch. 413.  It was admitted that the appellant, being at the time a citizen of the United States, and a citizen of and residing in the State of New Jersey, did commit the act and deed charged in the indictment, by selling by sample twelve bridle fronts and six leather blinkers for horse harness, without a license, and thereby violated this Act of the General Assembly of Maryland. The case was submitted for the purpose of obtaining the opinion and judgment of the Court upon the question, whether this Act is constitutional and valid.  The Court below adjudged the party guilty, and imposed the fine prescribed in the law, and from this judgment this appeal was taken, and has been argued on notes by counsel for the appellant, and by the Attorney-General for the State.

The law enacts that " no person, not being a permanent resident of this State, shall sell, offer for sale, or expose for sale, within the limits of the city of Baltimore, any goods, wares, or merchandise, other than agricultural products and articles manufactured in the State of Maryland, within the limits of said city, either by card, sample, or other specimen, or by written or printed trade list, or catalogue, whether such person be the maker or manufacturer thereof or not, without first obtaining a license so to do." The rate of license is fixed at three hundred dollars, to run one year from date, and the penalty for so selling without license is, for each offence, not less than four hundred nor more than six hundred dollars.  The same provision, so far as applicable to a case like this, is contained in the Code, Art. 56, secs. 37, &c., and has been the law of the State since 1852, a period of seventeen years.  No question has hitherto been raised as to the power of the Legislature to

enact such a law.  It is now assailed upon the ground of repugnancy to two provisions of the Constitution of the United States.

1st.  To that clause of the eighth section of the first article, which grants to Congress the power " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

2d.  To that clause of the second section of the fourth article, which declares that " the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States."

Before examining the decisions of the Supreme Court, which, upon such questions, are binding and authoritative expositions of the Constitution, and to which the Courts of all the States should yield respectful obedience, it is proper to ascertain what the law before us is, and what it seeks to accomplish.  It is not a law which, upon its face, purports to levy a tax by way of license to sell, upon either foreign or domestic imports, whilst remaining in the hands of the importer in original packages.  The indictment does not charge, nor does the record show that the goods sold by the appellant were goods of this description.  Nor does the law purport to be a tax upon the transit of goods through the State for traffic or commercial purposes.  But it is a tax upon a particular business or trade, carried on entirely within the limits of the State.  Maryland, in common with other States, has subjected to taxation, by way of license, and as a source of revenue, every kind of business or trading carried on within her limits.  With respect to her own citizens, her laws provide that no person or corporation within this State, other than the grower, maker, or manufacturer, shall barter or sell any goods, wares, or merchandise, without first obtaining a license in the mode prescribed, and these licenses are graded according to the amount of merchandise or stock on hand, held by each person at the principal season of

sale. There is nothing in this or any other law of the State, which prohibits or restrains non-resident merchants, manufacturers, or traders, or their agents, from bringing their goods here, and selling them in the same mode and under the same license as residents of the State. A custom, however, has grown up in recent times with merchants and manufacturers, in the large manufacturing and commercial cities and States, of travelling or sending agents or runners through other States and cities, with samples, cards, catalogues, or trade-lists of their goods, and thereby selling by retail or wholesale large quantities of merchandise, located beyond the limits of the States, where they thus sell, and not subject to the local State, county, or municipal taxation, as are like goods in the hands of resident merchants or traders, to the great detriment of the business and trade of the latter. Large sales are thus made, and an extensive and lucrative business is thus carried on, and it is the object of the law in question to search and subject to taxation, by means of a license, the trade and business thus transacted within the limits of the principal city of this State. It is therefore a tax upon a particular business or trade, carried on in a particular mode within the limits of the State, by a particular class of persons, and not a tax upon goods or merchandise imported into the State, either from foreign countries, or from other States, and the question is as to the power of the State to impose such tax.

1st. In reference to the first clause of the Constitution of the United States above quoted, all the decisions of the Supreme Court agree, that it confers upon Congress no power of regulation or direct control over the internal commerce or domestic trade of the States. *License Tax Cases*, 5 *Wallace*, 470. As said by Mr. Justice McLEAN, in delivering the opinion of the Court in the case of *Nathan vs. Louisiana*, 8 *How.*, 80, 82, " The right of a State to tax its own citizens for the prosecution of any particular business

or profession within the State, has not been doubted; and we find that in every State, money or exchange brokers, venders of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern-keepers, auctioneers, those who practice the learned professions, and every description of property, not exempted by law, are taxed. The taxing power of a State is one of its attributes of sovereignty. And where there has been no compact with the Federal Government, or cession of jurisdiction for the purposes specified in the Constitution, this power reaches all the property and *business* within the State, which are not properly denominated the means of the General Government; and as laid down by this Court, it may be exercised at the discretion of the State." Such is the emphatic language of the Supreme Court on this subject. Nor is it, we apprehend, less within the power of a State to tax, in the shape of a license, any trade, business, or occupation, when carried on in its borders by those who are not permanent residents of the State, whether foreigners or citizens of other States. Most of the States have exercised such power in the enactment of laws, requiring licenses from hawkers and peddlers, in the imposition of a tax, either direct or by way of license, upon the agents of foreign insurance companies, and other corporations doing business within their limits, and by laws similar in character to the one now under consideration. In *Brown vs. Maryland*, 12 *Wheat*, 419, a law of this State, which required all importers of foreign articles to take out a license to sell their importations in the original bale or package, was held to be invalid, because repugnant to the *prohibition* upon the States to lay imposts or duties on imports or exports, without the consent of Congress. The same law was also declared to be in violation of the clause giving to Congress the power to regulate commerce with foreign nations, and among the several States, but the Court said that though the importer could not be required to have a

license for selling a package of dry goods in the form in which it was imported, yet this state of things is changed, if he sells them, or otherwise mixes them with the general property of the State, by breaking up his packages, or travelling with them as an itinerant peddler. This decision, as explained by C. J. TANEY in the *License Cases*, 5 *How.*, 575, draws the line between foreign commerce, which is subject to the regulation of Congress, and the internal or domestic commerce of a State, over which Congress can exercise no control, and which belongs to the States; and the same view appears to have been taken of it by C. J. CHASE, in *Pervear vs. Commonwealth*, 5 *Wallace*, 475. It would be a strained construction of the power to regulate *commerce* " *among* the several States," to hold that it confers upon Congress the power to authorize the citizens of one State to travel through another, and sell their goods, either carried with them, or by sample, without license, whilst the citizens of the State where they thus travel and trade can be rightfully subjected to a State tax on their goods, and a State license to sell them. But whether the clause in question confers such power or not, it is sufficient that it has never been exercised by Congress, and therefore State laws, and State regulations on the subject are valid, for the mere grant of such power to Congress, so far as it relates to a case like the present, is not, of itself, a prohibition to the States, so as to render all State laws on the subject null and void. This point, notwithstanding the difference of opinion thereon, at one time existing among the Judges of the Supreme Court, and most conspicuously manifested in the *Passenger Cases*, 7 *How.*, 283, was settled by the decisions in *Cooley vs. The Board of Wardens, &c.*, 12 *How.*, 299, and in *Crandall vs. State of Nevada*, 6 *Wallace*, 35. No such effect can be given to the recent legislation of Congress, imposing burdens, by way of license fees or taxes, on various occupations, with a view of raising revenue. It has been decided, that these laws

imposed a license fee only as a species of taxation, without payment of which the business could not lawfully be. carried on, but which, nevertheless, did not propose to make any business lawful which was not lawful before, or to relieve it from any burdens or restrictions imposed by State legislation. *License Tax Cases*, 5 *Wallace*, 462; *Pervear vs. Commonwealth*, 5 *Wallace*, 475; *Commonwealth vs. Holbrook*, 10 *Allen*, 200. The law before us being such as we have indicated, a tax by way of license upon a particular trade or business, carried on entirely within the limits of the State, by persons not permanent residents of the State, we are clearly of opinion it is not invalid or unconstitutional by reason of this clause of the Constitution of the United States.

2d. Is it repugnant to the clause entitling the citizens of each State to all privileges and immunities of citizens of the several States?

Before adverting to the decisions upon this clause, it is proper, in this connection, to notice the argument that the law discriminates and imposes a higher rate of taxation upon manufactures of other States, and goods located beyond the limits of Maryland, and upon those who sell them, than is imposed on similar goods located in Maryland, and sold here by resident traders. It is to be observed that no direct State tax can reach goods outside of the limits of the State, but if we assume the effect of the law is to make discrimination in favor of the resident trader, and to protect the manufacturing and business welfare of the State, we know of no decision, of either State or Federal Courts, which would authorize us to pronounce it unconstitutional and void for that reason. In *Brown vs. Maryland*, C. J. MARSHALL expressly declined to give an opinion as to the validity of a law imposing a tax discriminating between foreign and domestic articles, and he said this, with reference to importations from a sister State. In the *License Cases*, 5 *How.*, 504, the laws

of several States imposing taxes, licenses, and restrictions upon the sale of spirituous liquors were sustained as constitutional and valid, and we do not perceive why the reasoning of the judges, who upheld the validity of restrictions thus imposed by State legislation, may not apply with equal force to other cases. A trade in other articles may be carried on in the limits of a State, in such mode and by such means, by persons not its permanent residents, as to prostrate the commercial and manufacturing interests, and businesss energies of its citizens, impede the growth of its cities, and be highly detrimental to the general welfare and prosperity of its people, and if so, may not restrictions and discriminating taxation, if not amounting to actual prohibition, be legitimately imposed upon it by State authority? Indeed, Mr. Justice Mc-Lean, in illustrating his views in these cases, makes the pertinent remark, "A State cannot, with a view to encourage its local manufactures, *prohibit* the *use* of foreign articles, or impose such a regulation as shall in effect be a *prohibition.* But it may tax such property as it taxes other similar articles in the State, either specifically, or in the form of a license to sell. *A license may be required to sell foreign articles, when those of a domestic manufacture are sold without one.*" Discriminations to this extent are made in the license laws of almost every State. In the case of *The People vs. Thurber,* 13 *Illinois,* 544, where a law imposing a tax of three per cent. on premiums charged by agents of foreign insurance companies, was assailed, the Court held it not to be a tax on property, but a burden imposed on the agent for the right of exercising a franchise or privilege within the State, which the Legislature would have the right to withhold or inhibit altogether. " It would be strange," says the Court, "if the Legislature had not the power to prescribe the terms upon which foreign corporations should be permitted to come into this State and carry on their business, or even to prohibit

them altogether." And in R. M. Charlton, 26, it was decided by Judge BERRIEN, in 1816, that a law imposing a tax of fifty cents on the hundred dollars on all goods, wares, and merchandise, not the produce of the State, *which shall be sold on commission* in the city of Savannah, by any person residing in its limits, was a legitimate exercise of power by the State, as a regulation of its own internal trade and commerce.

But without pursuing this series of decisions further, let us see if there is anything in the clause as to "privileges and immunities," which is contravened by the Act before us. The Supreme Court have declined to give a general construction to this clause. In Conner vs. Elliott, 18 How., 593, they said, "We do not deem it needful to attempt to define the meaning of the word privileges in this clause of the Constitution. It is safer and more in accordance with the duty of a judicial tribunal to leave its meaning to be determined in each case, upon a view of the particular rights asserted and denied therein. And especially is this true when we are dealing with so *broad a provision,* involving matters not only of great delicacy and importance, but which are of such a character that any merely abstract definition could scarcely be correct, and a failure to make it so would certainly produce mischief." A partial construction was given by this Court, in Campbell vs. Morris, 3 H. & McH., 554, to the effect that "it means that the citizens of all the States shall have the peculiar advantage of acquiring and holding real as well as personal property, and that such property shall be protected and secured by the laws of the State, in the same manner as the property of the citizen of the State is protected. It means such property shall not be liable to any taxes or burdens which the property of the citizen is not subjected to. It may also mean that as creditors, they shall be on the same footing with the State creditor in the payment of the debts of a deceased debtor. It secures and protects personal rights." In the enumeration made by

Ward *vs.* The State.

Judge WASHINGTON, in *Corfield vs. Coryell*, 4 *Wash. C. C. Rep.*, 381, are included "the right of a citizen of one State to pass through or reside in any other State, for the purpose of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus;* to institute and maintain actions of any kind in the Courts of the State; to take, hold, and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State." And in *Crandall vs. The State*, 10 *Conn.*, 344, C. J. DAGGETT, held, that should a citizen of Connecticut purchase a farm in Massachusetts, and the Legislature of Massachusetts tax the owner of that farm four times as much as they would tax a citizen of Massachusetts, *because* the one resided in Connecticut, and the other in Massachusetts, or should a law be passed by either of those States, that *no citizen* of the other should reside or trade in its limits, such laws would be unconstitutional as violative of this clause in the Constitution of the United States.

These decisions certainly show that the provision is effective to prevent the property, real or personal, owned by a non-resident, and located in the State, from being subjected to any higher rate of State taxation than similar property of resident owners, but, in our judgment, they do not cover the present case. The law before us is not a tax upon either person or property, but on a particular *trade* or *business*, carried on in the State, and cannot, in our opinion, be regarded as imposing a higher rate of taxation upon non-residents than upon citizens, either in respect to person or property. Nor do we perceive it to be in any other respect, unjust, unfair, or discriminating in operation and effect. We have shown that the State has power to impose a license tax on all trade or business carried on in its borders, whether by its own citizens, or those of other States. The resident owner or trader is required to take out a license to carry on his business or

trade, and his property and goods here situated are also subject to State, county, and city taxation. There is nothing upon the face of the law, or in this record, to show that the non-resident trader, doing the business thus taxed, is thereby subjected to *heavier taxation* than the resident merchant, carrying on the like retail or wholesale business. It certainly cannot be said to be an immunity or privilege secured by this clause of the Constitution, that a non-resident merchant or trader shall be permitted to come into a State, and trade nor do business therein, and pay neither a license tax on his trade, nor a tax on his property, whilst the resident merchant must pay both; to have all the advantages of a resident trader, and escape all taxation to which the latter is subjected. The law does not prevent his bringing his goods here, and selling them in the same mode and subject to the same tax as that imposed on all citizens of the State, but simply provides that if he keeps his goods elsewhere, and seeks to carry on the business of selling them here, by card or sample, he shall pay a certain tax, by way of license, for so doing, and there is nothing to show, and nothing in our license laws from which it can be inferred that the rate of license thus required exceeds *in amount* the *taxes* to which the resident trader is subjected.

We do not, however, rest our decision altogether upon this ground, for we are further of opinion that even if this law is to be regarded as restrictive and discriminating in its character and design, it still simply imposes a tax on a particular business, carried on in a particular mode within the limits of the State, which it is perfectly competent for the legislature to regulate and restrain, and in so doing, has violated neither of the clauses of the Constitution of the United States, to which reference has been made. The judgment is accordingly affirmed.

*Judgment affirmed.*

(Decided 2d July, 1869.)