Opinion delivered June 22, 1887.

No. 5565.

## EX PARTE W. G. ASHER.

CONSTITUTIONAL LAW—DRUMMERS'S OCCUPATION TAX.—An Act of the Seventeenth Legislature of the State of Texas imposes upon "every commercial traveler, drummer, salesman or solicitor of trade by sample or otherwise" an annual occupation tax of thirty-five dollars, payable in advance to the State comptroller, and enacts that any such trader who fails or refuses to exhibit the comptroller's receipt, when demanded by any tax collector or justice of the peace, shall be guilty of a misdemeanor punishable by fine of not less than twenty-five dollars, nor more than one hundred dollars. *Held* that this enactment, whether considered with reference to citizens of this or of other States, is a valid exercise of the taxing power of the Legislature, and in no respect violates or contravenes that provision of the United States Constitution which empowers Congress to "regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The contrary doctrine, in so far as citizens of other States are concerned, has been recently held by the Supreme Court of the United States in the case of Robbins v. The Taxing District, etc., but this court, while conceding that State tribunals are bound by such construction of the United States Constitution as is settled by adjudications of the Supreme Court of the United States, declines to recognize the authority of the said case, inasmuch as it was determined by a mere majority of the sitting justices, and a minority of a full bench, and is in direct conflict with other decisions of the same court, unanimously concurred in. See the opinion of this court for a collocation of elementary authorities, and of adjudications both State and Federal, in support of its ruling.

ORIGINAL APPLICATION for habeas corpus presented to the Court of Appeals, the judge of the district being absent therefrom. The grounds of the application and all material facts are disclosed in the opinion of this court.

*J. A. Kirlicks,* for the applicant.

*W. L. Davidson,* Assistant Attorney General, for the State: In the Robbins case, relied upon by the applicant, the majority of the court confounded two distinct questions, to-wit: First, the right of the United States government to regulate commerce not only with foreign nations but between the States; and, second, the right of each State to regulate its own taxation, provided it does not discriminate against other States and the citizens thereof; and this free of any control of the national government.

"The difficulty of drawing the line between constitutional and unconstitutional taxation by the States was acknowledged, and has always been acknowledged * * * but that there is such a line is clear." (Osborne v. Mobile, 16 Wall., 480.) The line may be drawn at this point, it occurs to me, to wit: whenever and wherever it becomes a question of carrying freight from one State to another, or of interstate transportation, then the State is prohibited by the Constitution from levying the tax; but whenever the tax is on a business or an occupation carried on in the State, then it can be imposed by the State, subject only to the restriction against discrimination. (Id., 483.) At least the last proposition is sound, and in harmony with our governmental theories. The right of the States to tax peddlers and merchants exists, unless prohibited by the Constitution. (Desty on Taxation, p. 1387.) And to impose a privilege tax on express companies. (Same authority, Memphis & Little Rock R. Co. v. Nolan, 14 Federal Reporter, 532.)

Where the tax imposed is only a tax on the privilege of doing business within the State, it is not in violation of the Constitution. (Railroad Co. v. Md., 21 Wall., 456.) The States have power to tax, notwithstanding the tax may have some indirect bearing on foreign commerce. (Nathan v. La., 8 How., 73; Packet Co. v. Catlettsburg, 105 U. S., 559. See 14 Federal Reporter, p. 535, head of "State Authority to Tax.")

The payment of taxes due in the home State of a merchant does not of itself entitle him to sell his goods in all other States, free of taxation, nor is such an exemption secured by the equal privileges clause of the national Constitution. It is only when a law discriminating against a foreign resident of a certain class, or against the goods held in another State for sale, in favor of a resident of the same class, and goods held within the State for sale, that it is obnoxious to the provisions of the national Constitution in relation to the privileges and immunities

of citizens of the several States.    (Ex parte Thornton, 12 Federal Reporter, 538-553.)

This case of Thornton lays down the broad proposition that "the Legislature has a right to discriminate against sample merchants in favor of merchants, the *State* being *sovereign mistress* of her own policy in determining what classes she shall lay a license tax upon, and what classes she shall exempt from such taxation, and in deciding how lightly or how heavily she shall make such a tax. This, however, is subject to the rule that the State must not thus legislate to discriminate against non residents in favor of residents, and against goods in other States, sold by sample, in favor of goods held within the State for sale. (Ex parte Thornton, 12 Federal Reporter, 538-553.) This decision of the question, as well as the case of Osborne v. Mobile, in 16 Wallace, 480, must prevail as the law of the land. They are in consonance with the theory and underlying principles of our national and State governments, and they guarantee State's rights without infringing the authority of the national Constitution. The Robbins case is subversive of both, and destroys the very principle of State's rights, and is subversive of every practical guaranty that equalizes the rights of the States and their citizens.

Again: A law imposing a license tax on transient persons doing business within the State does not violate the provisions of the federal Constitution. (Cole v. Randolph, 31 La. Ann., 535; The State v. North, 27 Mo., 464; The State v. Shapleigh, 27 Mo., 344; Desty on Taxation, 1389.)

Transient persons selling goods within the State, by wholesale or retail, on land or in water, are liable to pay a license tax. (Cole v. Randolph, 31 La. Ann., 535; Desty on Taxation, 1389.)

These authorities might be collated in still greater profusion, but enough has been gathered to show that the Federal courts as well as State courts with rare and singular unanimity hold that such is the law of the land. Standing out alone and in the face of this long, unbroken line of authority, is this case of Robbins v. The Taxing District of Shelby county, Tennessee, and it too based upon a law, which, if it brings up the question at all, does it so remotely as not to make it authority upon the questions involved in that case or in this case. (See the dissenting opinion of Chief Justice Waite and Associate Justices Field and Gray.)

I desire to call attention to the language of Chief Justice Waite in his dissenting opinion, in speaking of the law then under in-

vestigation. "As the law is valid so far as the inhabitants of the State are concerned, no inhabitant can engage in this business unless he pays the tax. If citizens of other States can not be taxed in the same way for the same business, there will be discrimination against the inhabitants of Tennessee and in favor of those of other States. This could never have been intended by the Legislature, and I can not believe the Constitution of the United States makes such a thing necessary. The Constitution gives the citizens of each State all the privileges and immunities of citizens in the several States, but this certainly does not guarantee to those who are doing business in States other than their own immunities from taxation on that business to which citizens of the State where the business is carried on are subjected." "This case shows the need of such authority in the States." (Robbins v. Taxing District; dissenting opinion by Chief Justice Waite.)

It will be seen at once the absurdity of any other construction than the above. Any other would lead inevitably to this state of facts: that the citizens of every State in the Union could flood Texas (or any other State) with its drummers, without paying any revenue to the State, while our own citizens would be forced to pay the tax imposed or suffer the penalty of violated law. Thus would be created unequal rights and oppressive discriminations, and the citizens and trades of other States would be fostered and cherished here to the exclusion of our own trades and business relations, and the oppression of our own citizens. This is not right; it is not the law, and never can be until the very life and spirit is crushed out of our free, democratic governments, and the whole theory of government altered and changed.

WHITE, PRESIDING JUDGE. This is an original application to this court for the writ of habeas corpus, in which it is alleged that the applicant is illegally restrained of his liberty for failure and refusal to pay a fine of thirty-five dollars ($35.00), imposed upon him by a justice of the peace of Harris county, on the charge of pursuing the occupation of a commercial traveler, drummer or solicitor of trade by sample, without having paid the occupation tax prescribed by law on said occupation.

It is admitted that applicant is a citizen of Louisiana and that he did pursue such occupation in Harris county, State of Texas, without having paid said occupation tax. It is admitted that the law has been violated as charged. But it is alleged that the

statute law of the State of Texas, under which petitioner was tried and is restrained in his liberty, is unconstitutional and void, in that it is in violation of, repugnant to and contravenes the interstate commerce clause of the Constitution of the United States.

Thus it will be seen that a direct attack is made upon the constitutionality of our State law which regulates the matter, and the question of its constitutionality is the only one to be determined on this proceeding. We find the statute complained of contained in chapter XVII General Laws, called session of the Seventeenth Legislature, pages 18 and 19, *et seq.*, and the particular provision attacked, which is in part an amendment to Article 4665, Revised Statutes, reads as follows, viz:

"From every commercial traveler, drummer, salesman or solicitor of trade by sample or otherwise, an annual occupation tax of thirty-five dollars, payable in advance; provided, that the tax herein required to be paid by such commercial traveler, drummer, salesman or solicitor, shall be paid to the comptroller of public accounts, whose receipts, under seal, shall be evidence of the payment of such tax; and provided further, that no county, city or town shall levy or collect any occupation tax upon such commercial traveler, drummer, salesman or solicitor; provided, that nothing herein contained shall apply to any one soliciting subscriptions for religious, literary or historical books or maps, or to persons soliciting for nurseries, newspapers and grave stones; provided further, that every commercial traveler, drummer, salesman or solicitor of trade, shall, on demand of the tax collector of any county of the State, or of any peace officer of said county, exhibit to such officer the comptroller's receipt above mentioned; and every commercial traveler, drummer, salesman or solicitor of trade who shall fail or refuse to exhibit said receipt to such officer on demand by him shall be deemed guilty of misdemeanor, and fined in a sum not less than twenty-five nor more than one hundred dollars."

This is a general law, and an infraction of its provisions is expressly declared to be a misdemeanor punishable by fine. Another of our general statutes provides that in misdemeanor cases where a party has been legally tried and fined he may be imprisoned in the county jail until said fine and costs are paid, so that if the statute in question be constitutional, a party convicted for its violation may suffer conjointly both fine and imprisonment.

It is urgently contended that this statute is in conflict with Article 1, section VIII, subdivision 3, of the Constitution of the United States, which declares that Congress shall have the power "to regulate commerce with foreign nations *and among the several States* and with the Indian tribes;" and we are most confidently cited by counsel for applicant in support of this position to the case of Robbins v. Taxing District of Shelby county, recently decided by the Supreme Court of the United States (March 7, 1887), in which it was, in substance, held that "a statute imposing a license tax upon drummers and others selling by sample within a certain taxing district is a regulation of interstate commerce, and therefore unconstitutional as applied to citizens of other States."

We are free to admit that a majority of the court, in that case, so held the law to be. We are free to admit that, if the decision of the majority be correct, it settles the law of this case in favor of the position assumed for applicant. We are further free to admit that in all cases involving clearly and unquestionably the constitutionality and validity of State laws with reference to provisions of the Constitution of the United States, the decisions of the Supreme Court of the United States, clearly, certainly and unequivocally expressed upon those questions, should and ought to be binding upon the State courts, because we fully recognize that "it is essential to the protection of the national jurisdiction, and to prevent collision between the State and national authority, that the final decision upon all questions arising in regard thereto should rest with the courts of the Union." (Cooley's Const. Lim., 5 ed., p. 16.)

But such decisions, no more than the decisions of the State courts, are or should be binding upon the latter, if in themselves unwarranted assumptions of constitutional authority—invocations of the federal power where such power does not and was never intended to apply and operate; and, moreover, where said decisions are directly in conflict with well adjudicated cases of the same court, which are not overruled, and which, in addition to their equal authority, are based upon fundamental and eternal principles of reason, justice and right.

We do not propose to enter upon a discussion anew of the delicate and important question of interstate commerce—a question so often and so ably discussed in the debates upon the adoption of the Federal Constitution, when the patent defects of the Articles of Confederation—intended to be corrected—were

directly present in the minds and experience of the framers of that instrument—a question so often discussed, much more ably than we could possibly hope to do, in the many adjudicated cases which have come under judicial investigation in the Supreme, Circuit and District Courts of the United States, and courts of last resort in the various States of the Union, as well as in standard elementary treatises of recognized authority. On the contrary, we shall content ourselves with simply stating certain elementary principles of government involving the question, and then cite the authorities bearing directly upon the issue presented in this case.

Mr. Cooley, in his work on the Law of Taxation, says: "The federal Constitution also provides that Congress shall have power to regulate commerce with foreign nations, and among the several States and with the Indian tribes. The Constitution, and the laws made in pursuance thereof, being supreme over the several States, the power of the regulation can not be interfered with, limited or restrained by any exercise of State authority. When, therefore, it is held that the power to tax is at the discretion of the authority which wields it, a power which may be carried to the extent of an annihilation of that which it taxes, and therefore may defeat and nullify any authority which may elsewhere exist for the purpose of protection and preservation, it follows as a corrollary that the several States can not tax the commerce which is regulated under the supremacy of Congress. But a tax on property, that may be the subject of commerce under congressional legislation, is not a tax on commerce." (Page 62.)

As to the general power of taxation of business, the learned author says: "Government may, in the discretion of its Legislature, levy a tax on every species of property within its jurisdiction; or, on the other hand, it may select any species of property, and tax that only. The same is true of occupations—governments may tax one, or it may tax all. There is no restriction upon its power in this regard, unless one expressly imposed by the Constitution." (Id., p. 384.) Again, he says: "A tax on the privilege of following any particular employment, is usually confined to those which, in some particular, are exceptional; either because supposed to be especially profitable, or because they require special regulations, or because the privilege is in the nature of a franchise, or because they supply a general demand; so the burden imposed will be generally distributed.

But no employment is absolutely exempt from the liability to be taxed. The necessities of the government may require that the lowest employment, as well as the most lucrative, shall contribute to its support; and, if any is exempted, motives of policy will govern the discrimination. When the tax takes the form of a tax on the privilege of following an employment, convenience in collecting will commonly dictate the requirement of a license: and the person taxed will be compelled to pay the taxes, as a condition to the right to carry on the business at all. In such a case, the business carried on without a license will be illegal, and no recovery can be had upon contracts made in the course of it." (Id., p. 385.)

In his invaluable work on Taxation, Mr. Desty sums up the doctrine thus: "A law imposing a license tax on transient persons doing business within the State, does not violate the provisions of the federal Constitution. Transient persons selling goods within the State by wholesale or retail, on land or on water, are liable to pay a license tax. To authorize a person to sell foreign merchandise without a license, he must have received it in exchange for articles of his own manufacture, or for productions of his own agriculture. The mere fact that a clerk, merchant or other person solicits orders or favors in his business does not necessarily bring him within the law authorizing a license tax to be imposed upon solicitors. The law means persons engaged in that particular class of business for a profit or as a means of livelihood. * * * A drummer or commercial traveler is not a peddler, because he does not carry with him the goods sold. A State law imposing a license fee upon merchants who go from place to place soliciting orders is not unconstitutional, as involving a duty or impost on imports, or a regulation of commerce, or unequal taxation. It is a legitimate tax on business." (2 Desty on Taxation, pp. 1389, 1390.)

We will now cite some of the State decisions involving this question. In Ward v. Maryland, 31 Maryland, 279, it was held "that it is within the power of the State to tax, in the shape of a license, any trade, business or occupation, when carried on in its borders by those who are not permanent residents of the State, whether foreigners or citizens of other States. That even if this law is to be regarded as restrictive (as to non-residents), and discriminating (in favor of her own citizens) in its character and design, it still simply imposes a tax on a particular business carried on in a particular mode within the limits of the State,

which it is perfectly competent for the legislature to regulate and restrain." That case was carried to the Supreme Court of the United States, and its disposition therein will be noticed hereafter.

In Cole v. Randolph, 31 Louisiana Annual, 535, it was held: "That the law imposing a license tax on transient persons doing business within the State, does not violate that provision of the Constitution of the United States vesting in congress the exclusive power to regulate commerce among the several States."

In Sears v. Board of Commissioners of Warren county, 36 Indiana, 267, it was held that the provision contained in "An Act concerning licenses to vend foreign merchandise, etc.," which required a license fee to be paid by traveling merchants and peddlers who are not residents of the State, to vend foreign merchandise is not in conflict with the interstate commerce clause in the Constitution of the United States.

In Robbins v. Taxing District, 13 Lea, 303, it was held that the law providing that drummers and all persons not having a regular licensed house of business in the taxing district, offering for sale or selling goods, wares and merchandise therein by sample, shall be required to pay a specified privilege tax, is constitutional and valid. This case went to the Supreme Court of the United States, and its reversal is the decision applicant relies on here.

Let us now cite some of the leading cases decided in the United States district and circuit courts:

In re Randolph was from the circuit court of the district of Nevada. It was therein held that a statute of Nevada, which provided that every traveling merchant, agent or drummer, or other person selling or offering to sell any goods, wares or merchandise of any kind to be delivered at some future time, or carrying samples and selling or offering to sell, goods, wares or merchandise of any kind similar to such samples, to be delivered at some future time, should procure a license, etc.; and further providing that any one pursuing such occupation without license should be guilty of a misdemeanor—did not violate the constitutional provisions relative to laying duties or imposts on imports, and interstate commerce. (2 Federal Reporter, 65.)

In a most elaborate and well considered opinion in Ex Parte Thornton in the circuit court for the eastern district of Virginia, Hughes, D. J., cites and reviews all the leading cases, and his conclusions, as stated in the syllabus, are: "If the legislature

of a State frames a law relating to merchants and sample mer-
chants with the intention to discriminate against non residents,
in favor of residents, and against goods in other States, sold
by sample, in favor of goods held within the State for sale, and if
the legislation has this practical effect, then such provisions are
null and void, and all arrests and prosecutions under these are
illegal. The legislature has the right to discriminate against
sample merchants in favor of merchants — the State being
sovereign mistress of her own policy in determining what
classes she shall levy a license tax upon, and what classes she
shall exempt from such taxation, and in deciding how lightly or
how heavily she shall make such tax. The assumption that a
merchant is necessarily a resident and that a sample merchant
is necessarily a non resident, is an arbitrary one, and one which
a court of justice has no right, by mere inference, to accept as
true. It is only when a law discriminates against a foreign res-
dent of a certain class, or against the goods held in another
State for sale, in favor of a resident of the same class, and
goods held within the State for sale, that it is obnoxious to the
provisions of the national Constitution in relation to the priv-
ileges and immunities of citizens of the several States, or the
regulation of commerce with foreign nations and among the
several States, or the prohibition of laying imposts or duties on
exports or imports." (12 Federal Reporter, 529.)

In Memphis and Little Rock Railroad company v. Nolan, Circuit
Court Western District of Tennessee, it was held that "a license
or privilege tax imposed by a State on the business of an ex-
press company, engaged solely in commerce between the States,
where there is no intention by this means to obstruct or prohibit
the business, is not unconstitutional." The learned judge deliv-
ering the opinion says: "As I read the cases, the principle is
that so long as it is not a direct tax on property carried in the
commerce between the States, imposed either on the goods or
indirectly collected from them, and is only a tax on the fran-
chise granted to the carrier in consideration of the grant, or,
what is the same thing, a tax or tribute demanded for the priv-
ilege of doing the business, the prohibition of the Constitution
does not apply. Of course, in analogy to our State adjudica-
tions, if under the disguise of taxing a franchise or privilege
the State should undertake by excessive taxation to obstruct or
prohibit the business of interstate commerce, the constitutional
provision would protect against it." (14 Federal Reporter, 532.)

We might cite many other authorities, which upon principle are in alignment with the foregoing, taken from elementary authors, and from the State and subordinate Federal courts; but these are sufficient to serve to illustrate the unanimity with which the question has been settled in so many various tribunals of standing and ability inferior to none in the country. Another fact connected with these decisions is the unanimity *and confidence* with which they cite and rely upon decisions of the Supreme Court of the United States in support of the conclusions they announce. This becomes passingly singular when the Robbins case, here relied on, states an entirely different and contradictory rule, and that, too, without overruling previous decisions of the same court in diametrical opposition to it. Let us cite some of these decisions: In Nathan v. Louisiana, Justice McLean says: "Now the federal government can no more regulate the commerce of a State than a State can regulate the commerce of the federal government. * * * The taxing power of a State is one of the attributes of sovereignty. And when there has been no compact with the federal government, or cession of the jurisdiction for the purposes specified in the Constitution, this power reaches all the property and business within the State, which are not properly denominated the means of the general government; and, as laid down by this court, may be exercised at the discretion of the State. The only restraint is found in the responsibility of the members of the legislature to their constituents. If this power of taxation by a State within its jurisdiction may be restricted beyond the limitations stated, on the ground that the tax may have some indirect bearing on foreign commerce, the resources of a State may be thereby essentially impaired. But State power does not rest on a basis so undefinable. Whatever exists within its territorial limits in the form of property, real or personal, with the exceptions named, is subject to its laws; and also numberless enterprises, in which its citizens may be engaged. These are subjects of State regulation and State taxation, and there is no Federal power under the Constitution which can impair this exercise of State sovereignty." (8 How. U. S., 73. Same docrine is declared in City of New York v. Miln, 11 Peters, 102.)

In Gibbons v. Ogden, 9 Wheaton, 203, the court, in commenting on inspection laws, uses this language: "They form a portion of that immense mass of legislation which embraces everything within the territory of a State, not surrendered to the general

government, all of which can be most advantageously exercised by the States themselves.    Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, are a component part of this mass.     *     *     *     *     No direct general power over these objects is granted to Congress, and consequently they remain subject to State legislation." See also License Cases, 5 Howard, United States, 504.

In Woodruff v. Parham, 8 Wallace, 123, it was held that "a uniform tax imposed by a State on *all* sales made in it, whether they be made by citizens of it, or citizens of some other State, and whether the goods sold are the produce of that State enacting the law or of some other State, is valid." This doctrine was reaffirmed in Henson v. Lott, Idem, 148, where the same State statute was involved, and after discussing the validity of the statute, that profound jurist, Mr. Justice Miller, concludes his opinion by saying:  "As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister States, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the State, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the State."

When the case of Ward v. Maryland, supra, came before the Supreme Court, the judgment of the State court was reversed, and the act declared invalid, not indeed as in contravention of the interstate commerce provision, but because it imposed a discriminating tax upon non resident traders, trading in the limits mentioned, and that it was, *pro tanto*, repugnant to the federal Constitution, and void. The provision of the Constitution which was violated was that which guaranteed and secured to the citizens of each State all privileges and immunities of citizens in the several States.    (Const., art. 4, sec. 2; 12 Wallace, 418.) Mr. Justice Bradley alone dissented, he being of opinion that the act violated the interstate commerce clause, and that it would so do, "although it imposed upon residents the same burden for selling goods by sample as is imposed upon non residents."

In the subsequent case of Osborne v. Mobile, 16 Wallace, 479, opinion by Chief Justice Chase, it is said:  "It is as important to leave the rightful powers of the State, in respect to taxation, unimpaired, as to maintain the powers of the federal govern-
43 — Tex. App. xxiii.

ment in their integrity." He further says, speaking of the decision in the case of State tax on railway gross receipts, 15 Wallace, 284, "the whole court agreed that a tax on business carried on within the State and without discrimination between its citizens and the citizens of other States, might be constitu tionally imposed and collected."

These two last cases are directly in point. They were decided by an unanimous court. They are not overruled in Robbins v. The Taxing District, relied upon by applicant in this case. They are directly in conflict with the Robbins case, and the Robbins case is simply the opinion of a majority and not of the whole court. Waite, Chief Justice, in, to our minds, an unanswerable opinion, concurred in by those profound and eminent jurists, Field and Gray, dissented from the doctrine announced. Under such circumstances we do not feel bound by the Robbins decision, and not believing it to be the law of this land, we will not consider it as of binding force upon us.

As conclusive as is to our minds the able dissenting opinion of the Chief Justice, there are one or more views of the case which he did not elaborate, and which, in our opinion, should condemn the doctrine announced.

The strongest position tending to support the doctrine of the Robbins case is, perhaps, that taken in Brown v. The State of Maryland, 12 Wheaton, 419. It was there said: "Any charge on the introduction and incorporation of the articles (of commerce) into and with the mass of property in the country, must be hostile to the power given to Congress to regulate commerce; since an essential part of that regulation and principal object of it is to prescribe the regular means of accomplishing that introduction and incorporation." The result of the reasoning in that case was, says Judge Story, "that whatever restrains or prevents the introduction or importation of passengers or goods into the country, authorized and allowed by Congress, whether in the shape of a tax or other charge, or whether before or after their arrival in port, interferes with the exclusive right of Congress to regulate commerce. (Dissenting opinion in City of New York v. Miln, 11 Peters, 161.)

Now for the application of this doctrine to the Robbins case. In the opinion of a majority of the court, it is conceded that the Tennessee law is not obnoxious to constitutional objection, either Federal or State, in so far as citizens of Tennessee are concerned; and that as to them it may be legally and rigidly enforced—

enforced by criminal prosecution, accompanied with appropriate fines and penalties. In other words, that as to citizens of Tennessee, it matters not that the action of the State may allow them to restrain and prevent the introduction of goods into the country and be valid, the same action is invalid as to citizens of other States, merely because they are citizens of other States. Such doctrine, to say the least of it, is anomalous, if not paradoxical.

Again, as stated in the beginning of this opinion, our statute makes it a misdemeanor for a person to pursue the occupation of a drummer, commercial traveler, or salesman by sample, without having first paid a license therefor. To do so is a criminal offense. In the Robbins case, under a law of similar character, it is conceded that the State had the right to pass and enforce such law against its own citizens. But the startling doctrine is announced that this same law is invalid and unconstitutional and incapable of enforcement as to persons not citizens of the State, who invade its territory and wantonly violate said law within its jurisdiction. In other words, that a general law of a State, penal in character, and violative of neither the Federal nor State Constitution, is binding upon none save its own citizens.

We have been accustomed to accept as elementary truth the doctrine that criminal laws are not respecters of persons, nor indeed can be, and that, as to them, no class of individuals may claim special immunity. Upon this subject, the Supreme Court of the United States, in The City of New York v. Miln, emphatically say: "No one will deny that a State has a right to punish any individual found within its jurisdiction, who shall have committed an offense within its jurisdiction against its criminal laws. We speak not here of foreign ambassadors, as to whom the doctrines of public law apply. We suppose it to be equally clear that a State has as much right to guard by anticipation, against the commission of an offense against its laws, as to inflict punishment upon the offender after it shall have been committed. *The right to punish or to prevent crime does in no degree depend upon the citizenship of the party who is obnoxious to the law.*"

The Constitution of the United States provides: "The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." The doctrine of the Robbins case goes further. It puts a premium upon non citizenship,

by discriminating in its favor against citizenship, and conferring upon it privileges and immunities which are denied to the citizens of the State. To such a doctrine we can not yield our assent.

In conceding that the Tennessee law was constitutional and binding as to the citizens of that State, it occurs to us that the majority opinion in the Robbins case virtually and in fact conceded whatever of merit there was in any question involved in that case on the appeal; and that the concession and conclusion reached are directly at variance. To nullify such a State law by judicial action is, in our opinion, to exercise, to say the least, a doubtful power, if it is not a direct usurpation of unauthorized power, warranted neither by the letter nor the spirit of the constitutional provision invoked to sustain it.

The fact that the law may and does affect more citizens of other States than of the individual State, is no criterion by which to judge of its constitutionality or validity. Whenever her own citizens are, or may be, equally affected, we deny that courts of federal jurisdiction may question the motives of the State Legislature in the passage of the act, much less declare it unconstitutional.

The statute we are construing, and which, in this proceeding, we are asked to hold unconstitutional, is a general law of equal application to the entire State ; and *pro tanto* is less objectionable than the Tennessee law, which applied only to a taxing district. It would, in our judgment, be a strained construction which would hold this law unconstitutional, within the spirit, much less the letter, of the provision of the federal constitution regulating *commerce between the States.*

So believing, we are of opinion that the relator is not illegally restrained of his liberty, by virtue of his conviction and imprisonment for a violation of this law. He is, therefore, remanded to the custody of the sheriff of Harris county, and it is ordered that applicant pay all the costs incurred in this court by reason of this proceeding.

*Ordered accordingly.*